Liston F. Coon, J.
Defendant, accused of 18 counts of conspiracy, narcotics offenses and criminal facilitation, seeks *229 to have the indictment, or various counts therein, dismissed on the following grounds: (1) defective Grand Jury proceedings (CPL 210.20, subd 1, par [c]; 210.35); (2) want of jurisdiction over the offenses (CPL 210.20, subd 1, par [h]); (3) insufficiency of the Grand Jury evidence (CPL 210.20, subd 1, par [b]); and (4) in the furtherance of justice (CPL 210.20, subd 1, par [i]; 210.40).
The People having consented to inspection, the court has read the minutes and determines that the motion to dismiss be granted as to counts 7 through 14, inclusive and otherwise denied.
DEFECTIVE GRAND JURY PROCEEDING
The court first examines defendant’s motion as to the alleged defect in the Grand Jury proceeding. In October of 1975 the Grand Jury of the Special Narcotics Courts of the City of New York heard testimony concerning defendant’s alleged activities in the narcotics trade. On October 15 the Grand Jury voted and on October 16 filed Indictment N1204-611/75. Assistant District Attorney Fishman, who presented the case to the Grand Jury, informed the court on November 12 that the transcribing stenographer had lost the stenographic minutes of Fishman’s Grand Jury charge, and that they would therefore not be available for court inspection. Fishman again went before the Grand Jury on November 13 and without representing the evidence, charged it as to the law. The Grand Jury thereupon returned the instant indictment, which is identical in language and counts charged to N1204-611/75. Resubmission was permissible without court authorization under these circumstances (People v Mollica, 25 Misc 2d 877; cf. People v Westbrook, 79 Misc 2d 902).
Defendant maintains that the procedure followed on November 13 was defective and that dismissal of the indictment is mandated as a matter of law. Had the prosecutor re-presented or read back the evidence, he argues, the grand jurors could have changed their minds on rehearing the evidence or re-evaluating the credibility of witnesses.
The case law is squarely to the contrary. Once a Grand Jury has heard evidence sufficient to support an indictment, it may vote superseding indictments without examining witnesses anew (People v Salerno, 3 NY2d 175; People v Page, 39 Misc 2d 584; People v Falasco, 121 Misc 538; Commonwealth v Clune, 162 Mass 206). Upon resubmission "any of the grand *230 jurors was at liberty to call for the reading of any or all of the former evidence if he had wanted. Witnesses could have been recalled if it had been thought necessary or desirable” (People v Salerno, 3 NY2d 175, 178, supra).
Defendant further maintains that the superseding indictment must have been voted upon by each and every Grand Juror present during the testimony. This contention is likewise without merit. The cases do not require an identical composition of the Grand Jury on the two occasions. What is required is that 12 of the Grand Jurors who voted the indictment heard the essential evidence (People v Salerno, 3 NY2d 175, 177-178, supra; People v Page, supra; CPL 190.25, subd 1). The court has examined the official record of attendance of the Grand Jury and finds that on November 13 when the indictment was voted, 18 grand jurors were present, 16 of whom were also present on October 8, 9, and 14, when the underlying evidence was presented. The presumed validity of the indictment has not been overcome (People v Howell, 3 NY2d 672).
FURTHERANCE OF JUSTICE
The motion to dismiss in the furtherance of justice can be quickly disposed of. CPL 210.40 (subd 1) authorizes such a dismissal only if there is "some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution * * * would constitute or result in injustice.” The defendant has alleged no facts whatever supportive of his contention, compelling or otherwise, and the motion is accordingly denied.
COUNTS 7 THROUGH 10
Turning now to the motion as it addresses specific counts of the indictment, counts 7 through 10 accuse the defendant respectively of sale of a controlled substance, possession with intent to sell, straight possession and criminal facilitation, all alleged to have occurred "within the New York City metropolitan area, in March or April, 1974.” These counts are patently defective and are dismissed under CPL 210,20 (subd 1, par [a]), 210.25 (subd 1) and 200.50 (subd 5). Not. only does the indictment on its face fail to allege the county of the alleged crimes’ commission, but the People by their responding papers state that they "are unable to provide particulars beyond those *231 given in the indictment.” It is also to be noted that the metropolitan area includes counties outside the City of New York.
COUNTS 11 THROUGH 14
Counts 11 through 14 accuse the defendant respectively of sale of a controlled substance, possession with intent to sell, straight possession and criminal facilitation, all arising out of an alleged transfer of cocaine in the vicinity of Newark Airport in the State of New Jersey. The District Attorney asserts that the Grand Jury had jurisdiction over these counts pursuant to CPL 20.20 (subd 1, par [c]; subd 2, pars [a], [b]).
CPL 20.20 (subd 1, par [c])
Under CPL 20.20 (subd 1) the New York courts may exercise jurisdiction over offenses where "conduct occurred within this state sufficient to establish * * * (c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those persons whose conspiratorial or other conduct of complicity occurred within this state”.
The People would read this provision as subjecting substantive crimes committed out-of-State to New York prosecution merely because they allegedly occurred in furtherance of a New York conspiracy. The court does not agree.
The in-State conduct required by subdivision (1) is that accessorial, participatory or preparatory to the substantive offenses consummated out-of-State. Under former subdivision 1 of section 1930 of the Penal Law and People v Werblow (241 NY 55) such in-State conduct must have reached the status of an element of the offense or an attempt to commit the offense. The CPL section merely lowered the quantum of the requisite New York anticipatory activity to include that sufficient to establish a defendant as a conspirator, criminal solicitor or accomplice. In order to bring a substantive offense within paragraph [c] of subdivision 1 the Grand Jury minutes must disclose evidence of a corrupt agreement to commit the substantive offense charged plus overt acts in New York preparatory thereto, or conduct in New York amounting to action in *232 concert with or criminal solicitation of another to commit the offense.
Counts 11, 12, 13 and 14 of this indictment do not fall within these categories. Neither the indictment nor the Grand Jury evidence discloses any conduct in New York on the part of the defendant anticipatory to or directed toward the New Jersey substantive offenses. Whatever overt acts were or were not committed, an agreement solely between seller and buyer to transfer narcotics is not sufficient to establish conspiracy to commit the sale, as the consummated crime necessarily involved the co-operation of the two persons (People v Potwora, 44 AD2d 207).
CPL 20.20 (subd 2, par [a])
The court next turns to CPL 20.20 (subd 2), which deals with situations in which none of the conduct constituting the offense occurred within New York. Under paragraph (a), jurisdiction can be exercised only where "the offense committed was a result offense and the result occurred within this state.” Neither sale nor possession of a controlled substance can be considered a "result offense” within the meaning of CPL 20.10 (subd 3), which is to say an offense of which a specific consequence is an element.
On the other hand, criminal facilitation is such a result offense, and count 14 sets forth on its face a crime subject to the jurisdiction of this court. A detailed examination of the Grand Jury testimony, however, fails to disclose evidence sufficient to establish resale of any of the specific Newark Airport cocaine in New York. The facilitator must have, through the conduct alleged, in fact aided in the commission of the object felony. There was, moreover, no evidence other than the testimony of the alleged Newark Airport buyer tending to connect the defendant with the claimed facilitation. Section 115.15 of the Penal Law provides that "a person shall not be convicted of criminal facilitation upon the testimony of a person who has committed the felony charged to have been facilitated unless such testimony be corroborated by such other evidence as tends to connect the defendant with such facilitation.”
CPL 20.20 (subd 2, par [b])
Finally, the People contend that jurisdiction over the New *233 ark Airport counts may be had under CPL 20.20 (subd 2, par [b]). This presents what appears to be a question of first impression. The paragraph provides for jurisdiction where "the statute defining the offense is designed to prevent the occurrence of a particular effect in this state and the conduct constituting the offense committed was performed with intent that it would have such effect herein.” The term "particular effect” is further defined by CPL 20.10 (subd 4) as follows: "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a 'particular effect’ upon such jurisdiction.”
The indictment alleges that the Newark Airport sale was committed "in furtherance of the conspiracy charged in counts one and six of this indictment,” the purpose of which was according to those counts "to sell and distribute cocaine in the City of New York and elsewhere.”
There is no doubt but that any transfer of cocaine in furtherance of the charged conspiracy, wherever it occurred, could have had a deleterious impact on the public weal of New York, by placing the cocaine in the stream of illicit commerce. That cocaine is harmful is a determination made within the proper purview of the Legislature (People v Hoffman, 76 Misc 2d 564).
The paragraph does not speak, however, in terms of the possible impact of the out-of- State conduct alleged in the indictment, but rather in terms of the design or intent of the statute defining the offense. Only if the statute is designed to prevent consequences to or within this "particular jurisdiction” may the person who commits the crime out-of-State be prosecuted here.
The court does not consider the term "particular” superfluous. It has been variously defined as meaning "individual; specific; local * * * partial in extent * * * not universal” (Black’s Law Dictionary [4th ed]), "apart from others; special; limited; specific” (67 CJS, p 881). The drafters of the paragraph took care in using the term to circumscribe jurisdiction over offenses committed wholly out-of-State, which they recognized as "somewhat more delicate and controversial than the other categories. The kinds of offenses contemplated [by the *234 paragraph] are exemplified by bribery and perjury, the 'effects’ of which are confined to corruption of New York’s governmental and judicial processes” (Staff Comment to Temporary Commission on Revision of the Penal Law and Criminal Code, Proposed New York Criminal Procedure Law, p 41 [1967]).
The delicacy of this basis of jurisdiction as perceived by the drafters arises from the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which prohibits overreaching by the States in the exercise of jurisdiction over out-of-State events (see Pearson v Northeast Airlines, 309 F2d 553, 563, cert den 372 US 912). Deprivations of due process are avoided only where the extraterritorial application of a statute is clearly derived from a recognized principle of conflict of laws.
Under the common law the applicability of criminal statutes was entirely local (The Antelope, 10 Wheat [23 US] 66; Story, Conflict of Laws, § 620). This was so because a sovereign State "within its own territory is necessarily * * * absolute. It is susceptible to no limitation not imposed by itself. Any restriction upon it, deriving validity from an external source, would imply a diminution of its sovereignty to the extent of the restriction” (Schooner Exch. v McFadden, 7 Cranch [11 US] 116, 136). Extraterritorial application of a State’s criminal statutes to an event committed entirely out-of-State would through the proscription on double jeopardy prevent the locus State from prosecuting offenses committed within its borders.
CPL 20.20 (subd 2, par [b]) codifies an exception to the general rule, that of "protective jurisdiction.” As it pertains to the law of nations, the rule refers to jurisdiction of a State to prescribe rules of law attaching legal consequences to extraterritorial conduct threatening "its security as a state” (Restatement, Foreign Relations Law of the United States 2d, § 33). Illustrations are the counterfeiting of a nation’s currency or false statements made to diplomatic officials at their foreign posts (see Rocha v United States, 288 F2d 545).
In other words, protective jurisdiction can be exercised only over offenses defined by protective statutes, which are of such nature that "to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high sea and in foreign countries as at home” (United States v Bowman, 260 US 94, *235 98). An apt and still valid formulation of the rule is found in a leading Michigan case dating from 1859: "every sovereignty has the right, subject to certain restrictions, to protect itself from, and to punish as crimes, certain acts which are peculiarly injurious to its rights or interests, or those of its citizens, wherever committed * * * unless calculated to injure the sovereignty or its citizens, no government can have any legitimate right to punish offenses committed within or without its limits.” (People v Tyler, 7 Mich 161, 221.)
In the interstate context, the rule is similarly limited. Strasheim v Daly (221 US 280), often cited as authorizing the exercise of protective jurisdiction, pertained to a prosecution under the Michigan statutes defining bribery and obtaining money from the State under false pretenses, offenses by their nature peculiarly injurious to the State of Michigan.
In the light of the legislative history and the applicable conflict of laws rule, the court concludes that jurisdiction under CPL 20.20 (subd 2, par [b]) is limited to those out-of-State offenses which by their nature produce palpably harmful consequences which are of necessity local and peculiarly injurious to the rights of this State or its citizens. Among the enactments covered are those designed to uphold the integrity of governmental or judicial processes of the State or its subdivisions, or the commission of frauds upon persons or institutions within the State. Excluded from the jurisdiction, where the charged crime was committed entirely outside the State, are those offenses pertaining to the general community welfare. As the definition of "particular effect upon a jurisdiction” of CPL 20.10 (subd 4) applies to the jurisdiction of counties under CPL 20.40 as well as of the State under CPL 20.20, the "community welfare” basis stated therein remains valid for purely intrastate offenses (see People v Brill, 82 Misc 2d 865).
The controlled substances offenses of article 220 of the Penal Law and criminal facilitation thereof fall within the latter "community welfare” classification. The motion to dismiss the indictment for want of State jurisdiction over the crimes charged is therefore granted as to counts 11 through 14 of the indictment.
COUNTS 1 THROUGH 6 AND 15 THROUGH 18
As to the remaining counts, numbered 1 through 6 and 15 through 18, the court finds that the evidence before the Grand *236 Jury was legally sufficient to establish the crimes charged. The motion to dismiss is accordingly denied as to those counts.