Manuel **SCHNITZER,** Gilbert Schnitzer, Morton Goodman, Edith Goodman, Kathleen Lewis, and Kenneth Lewis, Plaintiffs,

v.

**OPPENHEIMER & CO., INC., Richard Matoff and Robert Gordon, Defendants.**

No. Civ. 84–1053–PA.

United States District Court, D. Oregon.

July 31, 1985.

Kenneth M. Novack, Christopher W. Angius, Ball, Janik & Novack, Portland, Or., for plaintiffs.

Jeffrey A. Babener, Michael McArthur-Phillips, McMenamin, Joseph, Babener & Carpenter, Portland, Or., Robert H. Logan, David M. Grey, Keesal, Young & Logan, P.C., Long Beach, Cal., for defendants.

## OPINION

PANNER, Chief Judge.

Plaintiffs are investors who bring this action against defendants Oppenheimer & Co., Inc. (Oppenheimer), Oppenheimer broker Richard Matoff, and Oppenheimer tax arbitrage specialist Robert Gordon. The action arises from an investment scheme in which plaintiffs actively traded large amounts of closed-end investment company shares. Plaintiffs allege common law fraud and negligence, numerous federal and state securities laws violations, and violations of federal and Oregon Racketeering Influenced and Corrupt Organizations Acts (RICO).

Defendants Oppenheimer and Matoff move to dismiss the federal and state RICO claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), to compel arbitration of certain claims, and to stay trial of other claims pending arbitration. I grant the motion to dismiss. Dismissal of counts nine and twelve is with prejudice. Dismissal of counts ten, eleven, thirteen, and fourteen is without prejudice. Plaintiffs have twenty days to file an amended complaint. I deny the motions to compel arbitration and to stay trial.

## BACKGROUND

Plaintiffs allege the following facts in their complaint. During 1982 and 1983 Oppenheimer, Matoff, Gordon, and other Oppenheimer employees promoted the Oppenheimer Tax Arbitrage Program (Program). This consisted of a program of purchases and sales in shares of publicly traded closed-end investment companies. Investors executed margin agreements, allowing Oppenheimer to purchase large numbers of the shares and hold them for thirty-two days. The Program description provided that the shares would be sold on the thirty-second day after purchase. Participation in the Program also required plaintiffs to incur large amounts of debt.

Oppenheimer told plaintiffs that by participating in the Program, they could convert short term capital gains into long term capital gains in thirty-two days, and take advantage of other attractive tax benefits. Matoff and Gordon would select the shares that would maximize these benefits.

In 1983, Oppenheimer bought for plaintiffs about 70,000 shares of U.S. & Foreign Securities Corp. (UFO), a publicly traded investment company. Plaintiffs were unable to sell their UFO shares on the thirty-second day after purchase because of heavy selling of UFO shares by other Program investors and other UFO shareholders. Plaintiffs disposed of their shares afterwards, but at a price below what defendants had led them to expect. Plaintiffs also had to pay interest on the debt incurred to purchase the shares after the thirty-two day holding period. Plaintiffs' actual damages total about $307,500.

Defendants made several omissions and misstatements regarding the Program. For example, defendants failed to inform plaintiffs that the volume of UFO shares that plaintiffs and other Program investors would be required to sell in one day would be substantially greater than the average monthly trading volume in the shares, that this would greatly depress the shares' market price, and that plaintiffs would incur substantial losses as a result. Defendants also said that plaintiffs would be able to sell their shares on the thirty-second day of the holding period and that the sales would not exceed the capital gains distributions received on sales during the holding period.

The federal RICO claims are plead in counts nine to eleven. Counts nine and ten are plead in the alternative, in that count nine names Oppenheimer as a RICO defendant while count ten does not. In count eleven, plaintiffs allege that Oppenheimer should be vicariously liable for the RICO violations of its employees. The state RICO claims, which are plead in counts

twelve to fourteen, replicate the federal claims.

## STANDARDS

### Rule 12(b)(6).

A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus the complaint should be construed in the light most favorable to plaintiff.

### Rule 9(b).

Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.

In *Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir.1973), the Ninth Circuit adopted a relaxed approach to Rule 9(b).

Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity. But the rule does not require nor make legitimate the pleading of detailed evidentiary matter. ... Nor does the rule require any particularity in connection with an averment of intent, knowledge or condition of mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.

476 F.2d at 397 (citations omitted). The *Walling* court held that a complaint alleging the time, place, and nature of the alleged fraud satisfied Rule 9(b). In *Miscellaneous Service Workers v. Philco Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981), the Circuit interpreted the rule to require that the pleader also state the specific content of the false representations as well as the identities of the parties to the mispresentations.

## DISCUSSION

### I. Motion To Dismiss The RICO Claims.

Plaintiffs' federal RICO claims are stated in counts nine to eleven. Count nine is dismissed with prejudice. Counts ten and eleven are dismissed without prejudice.

### A. Pattern of Racketeering.

Defendants' first argument is that there is no pattern of racketeering activity here. Each subsection of section 1962 requires a "pattern of racketeering activity." Such a "pattern" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). An act of "racketeering activity" is done by committing one of many state and federal offenses enumerated in section 1961(1). Plaintiffs assert that the predicate offenses here are the wire and mail fraud associated with promotion of the Program. Securities fraud could also be added to this list.

### 1. Prior Criminal Convictions.

■ Plaintiffs need not plead prior criminal convictions for the predicate offenses. *Sedima S.P.R.L. v. Imrex Co., Inc.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

### 2. Probable Cause Pleading.

■ Defendants also argue that plaintiffs fail to plead a pattern of racketeering activity because they have not plead the predicate offenses with sufficient particularity to demonstrate probable cause that they occurred. Three district courts have imposed a probable cause requirement. *Laterza v. American Broadcasting Co., Inc.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682–83 (N.D.Ga.1983); *Bache Halsey Stuart Shields v. Tracy Collins Bank*, 558 F.Supp. 1042 (D.Utah 1983). While I sympathize with these courts' intentions, I agree with the Seventh Circuit that such a requirement would be unrealistic.

[A] determination of probable cause in the criminal context ordinarily involves some evaluation of the reliability of specific evidence. Even the most specific allegations do not establish probable cause unless they are reliable. We are,

to say the least, perplexed as to how a court might undertake such evaluations of reliability in deciding the motion to dismiss under Rule 12.... Yet the approach of the District Court in *Bache Halsey* appears to require a plaintiff to establish a case before any discovery is permitted. The *Bache Halsey* court argued that such specificity was needed in order to evaluate the merits of a claim and to distinguish between well-founded and frivolous claims.... While the Court's motives are admirable, its approach seems to us to be impractical. We see no grounds for demanding that a civil RICO plaintiff essentially plead evidence and prove the case in the complaint.

*Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 404 (7th Cir.1984) (citation omitted), *aff'd on other grounds*, — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

While I will not go so far as to require probable cause pleading, I agree that RICO plaintiff must meet a higher pleading standard than that imposed on an ordinary plaintiff. RICO's *in terrorem* effect is potent, in that a RICO defendant faces the unsavory label "racketeer" as well as the risk of triple damages. In many cases the RICO defendant may be guilty of no more than negligence, yet his reputation for honesty is at great risk. Because a RICO claim threatens the same kind of harm to a professional reputation as a fraud claim, a RICO plaintiff should plead the facts constituting the predicate offenses with the particularity required by Rule 9(b). This requirement is especially appropriate where, as here, the predicate offenses alleged in the complaint are acts of fraud.

■ Accordingly, allegations based on information and belief are not acceptable unless the complaint specifies the source of the information and the reasons upon which the belief is founded. Similarly, I will not automatically assume that Rule 11 has been honored. Triple damages offer too great a temptation. *See Taylor*, 572 F.Supp. at 682.

■ Plaintiffs' federal RICO counts alleging primary liability are not plead with the particularity required by Rule 9(b).

### B. *Enterprise Requirement.*

Plaintiffs must also plead the existence of an "enterprise" which was infiltrated or injured through a pattern of racketeering. 18 U.S.C. § 1962(a)–(d). An "enterprise," includes "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court set out three elements necessary to establish the existence of an enterprise: (1) an ongoing enterprise; (2) evidence that the various associates function as a continuing unit for a common purpose; and (3) an existence "separate and apart from the pattern of activity in which it is engaged." *Id.* at 582–83, 101 S.Ct. at 2528–29.

### 1. *Ongoing Operation.*

■ Defendants argue that the complaint should be dismissed because plaintiffs fail to satisfy the enterprise requirement in several ways. First, they argue that plaintiffs should have alleged that the enterprise was an ongoing operation, citing *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Anderson*, 626 F.2d 1358 (8th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). In these cases, the Third and Eighth Circuits held that for an enterprise to exist, there must be evidence of a formal structure. Defendants argue that the complaint should have alleged the enterprise's particular formal structure.

Plaintiffs need not plead the formal structure of the enterprise. *Riccobene* and *Anderson* involved post-trial appeals, not motions to dismiss. Both opinions discuss the standards of proof required at trial,

and never mention pleading requirements. The *Anderson* court also noted that its requirement of evidence of a formal enterprise structure was contrary to Ninth Circuit precedent, citing *United States v. Rone*, 598 F.2d 564, 570 (9th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

### 2. *Continuing Unit with a Common Purpose.*

■ Defendants cite *Turkette* and *Riccobene* for the proposition that plaintiffs must plead that the enterprise is a continuing unit with a common purpose. I reject this requirement for the same reasons I reject the ongoing operation requirement suggested by defendants.

### 3. *Separate Enterprise and Racketeering Activity.*

■ Defendants argue that the enterprises alleged here are not separate from the alleged racketeering activity. Plaintiffs agree that the enterprise must be plead as an entity separate from the pattern of racketeering activity. Plaintiffs argue, however, that the enterprise and racketeering activity need not be totally separate and distinct, and that there may be some interrelation between the two. I agree. The court in *Turkette* noted that "proof used to establish separate elements may in particular cases coalesce," and this seems true with regard to the enterprise and racketeering activity requirements. While lower courts are split on this issue, the Ninth Circuit appears to allow some overlap between the two. *See generally United States v. DeRosa*, 670 F.2d 889, 896 (9th Cir.), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982).

In count nine, plaintiffs allege that Oppenheimer, Matoff, Gordon, and other Oppenheimer employees associated with the Program formed a RICO enterprise. Oppenheimer is named as the RICO defendant. Alternatively, in count ten, plaintiffs allege that Oppenheimer was the RICO enterprise. Matoff and Gordon are named as the RICO defendants.

■ Count ten satisfies the separate enterprise/racketeering activity requirement. A separate enterprise is particularly likely to be found where, as here, the enterprise is a legal entity rather than an association-in-fact. *Bennett v. Berg*, 685 F.2d 1053, 1060 (8th Cir.1982). Oppenheimer, the enterprise named in count ten, is a corporate legal entity. Plaintiffs may be able to prove facts at trial showing that Oppenheimer was separate from the racketeering activity.

■ Count nine, as presently plead, does not appear to satisfy this requirement. The enterprise in this count is an associational one of Oppenheimer and Oppenheimer employees involved in the Program. Nevertheless, plaintiffs might prove facts satisfying this requirement. Thus, I will not dismiss either count on this ground.

### 4. *Separate Enterprise/Person Requirement.*

■ Both sides agree that the complaint should show that the RICO enterprise is separate from the RICO defendant or "person." Defendants argue that the whole complaint should be dismissed because count nine names Oppenheimer as a RICO person, while count ten names Oppenheimer as the enterprise. Defendants fail to recognize that these counts are plead in the alternative, and I reject their argument.

■ Analyzed separately, count ten appears to satisfy the separate enterprise/person requirement. Oppenheimer is the enterprise and Matoff and Gordon, its employees, are the RICO defendants. Count nine, however, cannot satisfy this requirement and is dismissed with prejudice. Count nine names Oppenheimer's Program as the enterprise and Oppenheimer and its employees as the RICO defendants. Oppenheimer cannot be separate from its own tax arbitrage program. This case is distinguishable from those in which a corporation is named as a RICO defendant after it participates in a scheme, or

"enterprise," with other associations or corporations.

### C. *Racketeering Injury.*

█ Plaintiffs need not plead a racketeering injury. *Sedima,* —— U.S. at ——, 105 S.Ct. at 3285.

### D. *Vicarious Liability.*

█ Plaintiffs' allegations of primary liability for federal RICO violations are in counts nine and ten. In count eleven, plaintiffs allege that Oppenheimer should be vicariously liable for the federal RICO violations of its employees. Defendants have not argued that Oppenheimer cannot be vicariously liable.

Count nine is dismissed with prejudice. Count ten is dismissed without prejudice. Because no count alleging primary liability remains at present, count eleven is also dismissed without prejudice.

### E. *Oregon RICO.*

█ Like other courts in this district, I interpret Oregon's RICO statute as I do the federal statute. *E.g., Ahern v. Gaussoin,* 611 F.Supp. 1465, 1494 (1985). The state RICO claims in counts twelve to fourteen mimic the federal claims in counts nine to eleven. Accordingly, I dismiss count twelve with prejudice, and dismiss counts thirteen and fourteen without prejudice.

## II. *Motion To Compel Arbitration.*

Defendants move to compel arbitration of all pendent claims and any federal claims for which there is no explicit private right of action. Defendants also move to stay trial of the remaining claims pending arbitration. I deny both motions.

The parties agree that all plaintiffs signed customer agreements that contain the following arbitration clause:

16. Any controversy between you and the undersigned arising out of, or relating to this agreement, or the breach thereof, or arising out of transactions with you shall be settled by arbitration, in accordance with the Rules, then obtaining, of either the National Association of Securities Dealers, Inc. or of the New York Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after receipt of notification from you requesting such election, then you may make such election. Any arbitration hereunder shall be before at least three arbitrators, and the award of the arbitrators or a majority of them shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction.

Paragraph seventeen of the customer agreement also provides that "[t]his agreement and its enforcement ... shall cover individually and collectively all accounts which the undersigned may open or reopen with you...."

The Federal Arbitration Act provides in part:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

9 U.S.C. § 2.

### A. *Federal Securities Claims Without Explicit Private Action.*

█ Defendants argue that plaintiffs' federal securities claims are subject to arbitration, as none is based on a section granting an explicit private right of action. This would apply to count one, based in section 20(a) of the 1933 Securities Act (1933 Act), count three, based in section 10(b) of the 1934 Securities Exchange Act (1934 Act), and count five, based in section 17(a) of the 1933 Act.

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that predispute agreements to arbitrate disputes did not apply to claims made under section 12 of the 1933 Act. Section 14 of the 1933 Act provides that any "stipula-

tion" waiving compliance with any provision of the Act is "void." 15 U.S.C. § 77n. The arbitration agreement in *Wilko* amounted to such a stipulation.

In *Scherk v. Alberto Culver, Inc.*, 417 U.S. 506, 513–14, 94 S.Ct. 2449, 2454–55, 41 L.Ed.2d 270 (1974), the Court questioned whether *Wilko* should apply to federal claims for which there is no explicit private right of action. The effect of the Court's recent decision in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), however, is that *Wilko* applies to federal claims for which there is no explicit private right. In *Byrd*, the parties had a written agreement to arbitrate disputes. Plaintiff filed a complaint alleging violations of section 10(b) of the 1934 Act and various state securities laws. Defendant Dean Witter moved for arbitration of pendent claims. The District Court denied the motion, and the Ninth Circuit affirmed. The Supreme Court reversed, rejecting the Circuit's rule that arbitration was inappropriate where the arbitrable and nonarbitrable claims were "intertwined."

A unanimous Court refused to decide whether *Wilko* should apply to section 10(b) claims, noting that at the district court level Dean Witter had assumed that section 10(b) claims were not subject to the arbitration clause of the contract. Nevertheless, the Court indicated that the general rule in the Ninth Circuit and others was not to require arbitration of federal claims for which there was no explicit private right.

*Wilko* has retained considerable vitality in the lower federal courts. Indeed, numerous District Courts and Courts of Appeals have held that the *Wilko* analysis applies to claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and that agreements to arbitrate such claims are therefore unenforceable. See, *e.g., Delancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1258–59 (CA9 1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d 823, 827–29 (CA10 1978); *Weissbuch v.*

*Merrill Lynch, Pierce, Fenner & Smith,* 558 F.2d 831, 833–35 (CA7 1977); *Sibley v. Tandy Corp.*, 543 F.2d 540, 543, and n. 3 (CA5 1976), *cert. denied*, 434 U.S. 824, [98 S.Ct. 71, 54 L.Ed.2d 82] (1977); see also Brief for Petitioner 4 n. 3 (citing cases); Brief for Securities Industry Association, Inc., et al. as *Amici Curiae* 10, n. 7 (same).

105 S.Ct. at 1240 n. 1.

Only Justice White indicated that he agreed with the dictum in *Scherk*, stating that he had substantial doubt that *Wilko* should apply to section 10(b) claims. I follow the Circuit's position and deny the motion to compel arbitration of the federal claims.

### B. *Pendent Claims.*

█ Defendants also argue that plaintiffs' pendent claims should be arbitrated. *Byrd* provides strong support for their position. *See also Southland Corporation v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (upholding supremacy of Act and requiring arbitration of pendent claims despite state statute forbidding arbitration of claims).

Plaintiffs argue that the pendent claims should not be arbitrated because the customer agreements are contracts of adhesion and unenforceable. They contend that the arbitration provision was a mandatory provision in a standard form agreement, and that they signed it because of unequal bargaining power. The Court in *Byrd* refused to reach this issue, as the parties had not raised it below. 105 S.Ct. at 1240 n. 1. Whether the arbitration clauses here are unconscionable is a question of fact that probably cannot be resolved without additional evidence. The parties have also failed to brief this issue adequately. Thus I deny the motion to compel arbitration of the pendent claims.

### C. *Stay of Trial Pending Arbitration.*

Because I deny the motion to compel, the motion to stay trial pending arbitration is moot and I deny it.

CONCLUSION

I grant the motion to dismiss all RICO claims. Dismissal of counts nine and twelve is with prejudice. Dismissal of counts ten, eleven, thirteen, and fourteen is without prejudice, and plaintiffs have twenty (20) days to file an amended complaint complying with this opinion. I deny the motions to compel arbitration and to stay trial.