**PHILAN INSURANCE LTD. and Benodet Insurance Ltd., Plaintiffs,**

v.

**FRANK B. HALL & CO., INC., et al., Defendants.**

No. 87 Civ. 4624 (JMW).

United States District Court, S.D. New York.

April 17, 1989.

Michael D. Brown, Christopher B. Hitchcock, Peter J. Biging, Ohrenstein & Brown, New York City, for plaintiffs.

Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Hall defendants.

Charles K. O'Neill, Chadbourne & Parke, New York City, for RBH and RBH Bermuda.

Sol Kroll, Raymond L. Mylott, Jr., Michael T. Walsh, Kroll & Tract, New York City, for Fielding & Partners, and PWS Marine, Ltd.

Ronald E. DePetris, Summit Rovins & Feldesman, New York City, for Carol and Leonard Smith.

Daniel F. Gaven, Palmeri, Gaven & Soberman, New York City, for Keough Kirby and Keough–Kirby Re.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Currently before the Court are defendants' motions to dismiss the Amended Complaint on the grounds that the Racketeer Influenced and Corrupt Organizations Act ("RICO")[1] claim not only fails to state claims upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), but also fails to provide the particularity mandated by Rule 9(b) of the Federal Rules of Civil Procedure; and because the Court lacks subject matter jurisdiction over the remaining state law claims, Fed.R.Civ.P. 12(b)(1). Defendants, in brief, argue that plaintiffs hope to transform an alleged garden variety embezzlement of insurance premiums into a multi-million dollar treble damage RICO case.

### I. FACTUAL BACKGROUND

The plaintiffs (collectively referred to as "Philan") are two reinsurance companies incorporated in the Cayman Islands. Plaintiffs allege that Leonard Smith, then a vice-president of defendant Frank B. Hall Re ("Hall"), bribed their chief financial officer, Steven Maloney, by offering to divert a percentage of plaintiffs' reinsurance premiums to Maloney's personal account. All told, more than $1 million was allegedly diverted to Smith and Maloney.

Plaintiffs contend that Maloney's role was to "bind" plaintiffs to insurance risks—beyond plaintiffs' capacity to absorb —presented to Maloney by the defendant insurance brokers. Without this conspiracy, allegedly joined later by the remaining co-defendants, plaintiffs contend that the defendants would have remained unable to place these so-called hard to place risks, and thus would not have collected various brokerage commissions.

To accomplish this alleged scheme, Smith and Maloney approached defendant Rollins Burdick Hunter Co. ("RBH"), a Delaware

---

1. *See* Organized Crime Control Act of 1970, 18 U.S.C. § 1961 *et seq.*

corporation with its principal place of business in Chicago. RBH is engaged in the commercial insurance business through its ownership and operation of subsidiaries such as defendant Rollins Burdick Hunter of Bermuda, Ltd. ("RBH Bermuda"). RBH Bermuda allegedly set up a shell company called Mansion Management Services, Ltd. ("Mansion") to serve as a conduit. Thus, plaintiffs allege, brokers with hard to place business would have their risks accepted by plaintiffs, through Maloney; Smith would then direct these participating brokers to transmit the premium to Mansion or Island Corporate Services, Ltd. ("Island") rather than to plaintiffs; Mansion or Island would then forward 90% of the premiums to plaintiffs, 9% to Smith and Maloney and 1% to itself. Sometime thereafter, Smith terminated his employment with Hall and, along with defendant Keough Kirby Associates, Inc. ("Keough Kirby"), an insurance company incorporated in Rhode Island, formed defendant Keough–Kirby Re, Ltd. ("Keough Kirby Re"), a reinsurance company incorporated in New York. He allegedly continued the conspiracy while at Keough Kirby Re, which helped create Island, the second shell corporation, to facilitate the conspiracy. Defendant Fielding and Partners ("Fielding"), a British insurance broker, allegedly bribed plaintiffs' agents, Smith and Maloney, by consenting to divert premiums to Mansion, Island, and to Smith's and Maloney's personal accounts. Defendant PWS Marine, Ltd. ("PWS"), a British property and casualty insurance broker, allegedly participated in the fraudulent scheme by diverting premiums owed plaintiffs to Maloney and his wife.

The Amended Complaint asserts 15 claims: one RICO count, and 14 state law charges, including common law fraud, breach of fiduciary duty, negligence, and malpractice. The RICO count alone seeks judgment after trebling in excess of $210,000,000. Several of the remaining counts seek $70,000,000 in compensatory damages plus $50,000,000 in punitive damages.

The defendants move to dismiss on several grounds. First, defendants claim that plaintiffs have not adequately pleaded their RICO count. As their predicate acts, plaintiffs assert violations of the mail and wire fraud statute, 18 U.S.C. §§ 1341 and 1343; commercial bribery, N.Y.Penal Law § 180.03; and transportation of stolen money, 18 U.S.C. § 2315. Defendants argue that no predicate act is adequately pleaded. The fraud claims, defendants assert, fail pursuant to Rule 9(b) for lack of particularity; the bribery count similarly fails because it does not provide the requisite factual basis to establish the elements of the crime; and the transportation of stolen money charge also fails to plead facts to establish the necessary elements of the crime alleged.

Defendants also argue that plaintiffs have failed to identify the person or persons who allegedly committed the acts prohibited by RICO—a necessary element of any RICO claim.[2] Defendants argue further that if the Court dismisses the RICO count, then the state law claims should be dismissed for lack of subject matter jurisdiction and the Court should not retain pendent jurisdiction over them.

## II. DISCUSSION

The Court will not review exhaustively each argument made by each party; the papers in this case have become more than a little unwieldy—the Amended Complaint alone has 120 paragraphs—resulting in part from plaintiffs' filing an unauthorized *second* memorandum in opposition, which in turn invited a series of letters from the various counsel for defendants. For present purposes, on defendants' motion to dismiss, the Court will focus, as it should, on various paragraphs in the Amended Complaint itself.

### A. *The RICO Count:*

Plaintiffs allege jurisdiction based on 28 U.S.C. §§ 1331, 1332, 1337, 18 U.S.C.

---

**2.** The Court's disposition of defendants' motions renders unnecessary a consideration of this argument.

§§ 1964(a) and (c), as well as principles of ancillary and pendent jurisdiction. *See* Amended Complaint ¶ 1.[3] Because this Court concludes, as explained below, that complete diversity does not exist, plaintiffs' sole basis for jurisdiction remains their single RICO count. *See* Am.Comp. ¶¶ 1–56. As a preliminary matter, the Court notes that nothing in the recent Second Circuit *en banc* opinions in *Beauford, et al. v. Helmsley, et al.*, 865 F.2d 1386 (2d Cir. 1989), or its criminal counterpart, *United States v. Indelicato*, 865 F.2d 1370, decided the same day, alters the Court's analysis of the RICO count in this case.[4] The Court first turns its attention to that count, and will examine, in turn, each predicate act as pleaded.

### 1. *Mail and wire fraud:*

■ If fraud is alleged as a predicate act in a RICO claim, it must be alleged with the particularity required by Fed.R.Civ.P. 9(b). *Royal Anchor, Inc. v. Tetra Finance (HK) Ltd.*, [1986 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,432 at 92,647, 1986 WL 735 (S.D.N.Y.1986). Rule 9(b) serves at least three important purposes: first, it ensures that a defendant is aware of the actions upon which the allegations of fraud are based; second, it helps protect a defendant's reputation by preventing insufficient allegations of fraud; and third, it prevents strike suits. *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir.1987). The Amended Complaint must state the content of the statement as well as the time, place, and speaker for each statement. *DiVittorio*, 822 F.2d at 1247; *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

The complaint must include "a definitive identification of the respects in which [alleged nondisclosures or misstatements] were false, misleading or inaccurate, or what omissions were made, and why the statements were believed to be misleading." *Decker v. Massey–Ferguson, Ltd.*, 534 F.Supp. 873, 877 (S.D.N.Y.1981), *aff'd in part, rev'd in part*, 681 F.2d 111 (2d Cir.1982). Moreover, "fraud pleadings generally cannot be based on information and belief ... On the other hand, fraud allegations may be so pleaded as to facts peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of facts upon which the belief is founded." *Stern v. Leucadia National Corporation, Inc.*, 844 F.2d 997, 1003 (2d Cir.1988) (citations omitted). Although Rule 9(b) permits state of mind to be pleaded generally, the Second Circuit has held that some basis for fraudulent intent must be alleged. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) ("These factual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent").

This Court requires a strong showing from plaintiffs because, as the Second Circuit has explained, "It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically." *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972) (citation omitted).

**3.** Although they address NY CPLR § 302(a)(2) in one of their memoranda, plaintiffs failed to allege that provision as a basis for jurisdiction in their Amended Complaint. Moreover, the Court need not address whether or not personal jurisdiction exists because the Court dismisses the Amended Complaint on other grounds. *See infra.*

**4.** In those opinions, the Second Circuit, in brief, shifted its analysis of relatedness and continuity from the enterprise element to the pattern element; held that a RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and held

that acts that are not widely separated in time or space may still properly be deemed separate acts of racketeering activity for purposes of a RICO analysis. *See Beauford*, at 1390–91. Those questions are not at issue here.

Although the Second Circuit's opinions did not address the dispositive issues raised by these motions, that court's rare *en banc* reconsideration of RICO provided the Second Circuit with an opportunity potentially to redefine any aspect of a civil or criminal RICO suit. For that reason, this Court postponed its consideration of the civil RICO suits before it.

Plaintiffs have failed to plead fraud with the requisite particularity. The Amended Complaint before the Court is pleaded almost exclusively on information and belief. Moreover, plaintiffs have not convinced the Court that the necessary facts are "peculiarly within" defendants' knowledge, nor have they provided an adequate statement of facts upon which their belief is founded, a particularly striking deficiency given the unusual background of this case. Before they filed this suit, plaintiffs conducted a year-long investigation of this alleged criminal scheme through the offices of a professional insurance investigator and, in that investigation, plaintiffs had at the very least significant cooperation from almost every named defendant in this case. *See, e.g.,* Affidavits of Leonard Smith, Charles Higham, Randolph C. Weston, John R. Hagues. While plaintiffs argue that they did not have defendants' "full cooperation," they do not dispute that some cooperation was provided. More important, in response to defendants' numerous affidavits setting forth their extensive cooperation, plaintiffs merely offer conclusory assertions to the contrary in their reply memorandum—assertions unsupported by any sworn statements. For instance, plaintiffs contend that "not one of the documents most directly illustrative of the bribery scheme ... were at any time made available by defendants to plaintiffs' investigator." P. Reply at 80. As defendants note, an affidavit from that investigator remains conspicuously absent.

The Court also deems inadequate plaintiffs' attempts to allege scienter. Plaintiffs must "specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge of the facts [of the fraudulent activity or] ... recklessly disregarded their existence." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Plaintiffs have failed to establish a "strong inference" that the defendants possessed the requisite fraudulent intent.

While the complaint contains the expected boilerplate, it offers few particularized recitations. For instance, the complaint alleges that Smith "induced" the plaintiffs to do business with the Hall defendants, but does not allege what he actually said; when he said it; or to whom. Am.Comp. ¶ 26(a). The complaint alleges, again in a conclusory manner, that Mansion received and disbursed a "portion of the premium rightfully belonging to plaintiffs but embezzled and converted by the Conspirators." Am.Comp. ¶ 26(c). Yet the plaintiffs provide no specific allegation which might show that the diverted money had become the plaintiffs' property. As one more example, ¶ 29(c) also alleges that unspecified defendants concealed, falsified, and disguised records—but fails to identify an act or report or record.[5]

The closest the Amended Complaint comes to any specificity is provided by ¶ 49, which outlines a few communications exchanged between the defendants. However, the mere reference to certain letters, without more, falls short of what is required. The Amended Complaint must specify "in what respects [the communications] were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading." *Todd v. Oppenheimer,* 78 F.R. D. 415, 420 (S.D.N.Y.1978). Plaintiffs must also adequately allege deceit. *Cf. United States v. Koenig,* 388 F.Supp. 670, 722 (S.D.N.Y.1974). As defendants note, a "showing, however convincing, that state crimes of misappropriation, conversion, embezzlement and theft were committed does not establish the federal crime of using the mails *to defraud ..." Parr v. United States,* 363 U.S. 370, 393–94, 80 S.Ct. 1171, 1184–5, 4 L.Ed.2d 1277 (1960) (emphasis added).

The Court will not permit the equivocal communications set forth in ¶ 49 to prop up

---

**5.** Moreover, the Court rejects plaintiffs attempts to characterize their complaint as one that pleads fraud by omission or nondisclosure, and therefore might *arguably* be subject to a less stringent standard. *Compare* P.Opp. at 21–22 *with* Am.Comp. ¶¶ 26(a), (d), 50(a), (e), (f). *See also* Hall Reply, at 6–10.

a 120 paragraph complaint, pleaded almost exclusively on information and belief, that seeks in excess of two hundred million dollars in damages. Indeed, it remains undisputed that one of the letters referred to in ¶ 49 was not even mailed in the United States. *See, e.g.,* Fielding Opp. at 10. Moreover, only some of the defendants, and far from all, have any relationship to the communications mentioned. *See* Am. Comp. ¶ 49. More important, the communications addressed in ¶ 49, standing alone and without further specific support, do not cure the overall deficiencies in the complaint. *See supra.*

Accordingly, this Court concludes that the Amended Complaint provides insufficient particularity for those predicate acts sounding in fraud, and therefore, that those parts of the Amended Complaint must be rejected pursuant to Rule 9(b).

### 2. The other predicate acts alleged:

■ The Amended Complaint before the Court alleges three types of predicate acts: mail and wire fraud; commercial bribery; and transportation of stolen money. There is no doubt that the mail and wire fraud allegations fall under the heightened requirements of Rule 9(b). This Court, however, also holds that Rule 9(b) governs the pleading of any predicate act within an alleged civil RICO conspiracy. As Judge Sweet of this Court explained, in holding that *every* element of a civil RICO suit must be evaluated under Rule 9(b):

> If ... sensitivity toward a defendant's reputation is called for in every garden variety fraud, then surely equal solicitude for defendants' good names is necessary in an action which goes much further and labels them "racketeers." ... [A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions ... It would make little sense to require that the elements of fraudulent

predicate acts be pled with particularity in order to protect the defendant's reputation, while allowing the overarching civil RICO claim—with its far greater capacity for reputational damage—to be alleged generally.

*Plount v. American Homes Assurance Co., Inc.,* 668 F.Supp. 204, 206–7 (S.D.N.Y. 1987). *See also Schnitzer v. Oppenheimer & Co.,* 633 F.Supp. 92 (D.Or.1985); *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667 (N.D.Ga.1983); *Ralston v. Capper,* 569 F.Supp. 1575, 1581 (E.D.Mich.1983). *But see United States v. International Brotherhood of Teamsters, et al.,* 708 F.Supp. 1388 (S.D.N.Y.1989); *Federal Paper Board Co., Inc. v. Amata, et al.,* 693 F.Supp. 1376 (D.Conn.1988), *United States v. Bonanno, et al.,* 683 F.Supp. 1411 (E.D.N.Y.1988); *Extebank v. Finkelstein & Poll,* No. 85–2958, 1988 WL 127494 (E.D.N.Y. November 17, 1988) (available on Lexis).[6]

To apply the particularity requirements of Rule 9(b) in this manner in no meaningful way undermines the Supreme Court's direction that "RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This Court will permit all properly initiated RICO suits to go forward; indeed, plaintiffs will be given leave to replead. By today's decision, the Court only intends to ensure that RICO plaintiffs provide RICO defendants with adequate notice of the allegations against them.

Even a cursory reading of the Amended Complaint reveals that the predicate acts of commercial bribery and transportation or receipt of stolen money cannot withstand scrutiny under Rule 9(b). If plaintiffs choose to replead, they must bear in mind today's holding as they address *each* predicate act alleged. Regardless, as is shown briefly below, the complaint fails to allege, even in a conclusory manner, the requisite elements of each crime and would be dismissed even if the Court did not apply the

---

**6.** Some of the cases holding otherwise can be readily distinguished. In *Teamsters,* for instance, Judge Edelstein of this Court stressed that, unlike *Plount,* not only had the suit before him been brought by the government but it also did not seek treble damages. Although Judge Sweet did not discuss damages in *Plount,* Rule 9(b)'s role in discouraging strike suits is even more applicable to civil RICO suits where, as here, the damages sought—and therefore possible settlements envisioned—dwarf those involved in typical fraud suits.

heightened particularity requirement to these allegations.

(a) Commercial bribery:

 The complaint speaks of "acts of commercial bribery" yet fails to identify them. Further, in ¶¶ 25, 26(b), 26(f), 26(g)(i) and 49(a)—the only paragraphs where bribery is mentioned at all—the complaint does not even allege the requisite intent and lack of consent for commercial bribery. *See* N.Y.Penal Law § 180.03. It also remains unclear whether or not any of the alleged bribes actually took place in New York—regardless of whether they involved someone who was *in* New York—and whether they satisfy the New York nexus requirement. *See* N.Y.Crim.Pro.L. § 20.20; *People v. Puig,* 85 Misc.2d 228, 231–6, 378 N.Y.S.2d 925, 932–36 (Sup.Ct. N.Y.Co.1976).

 The defendants also note an inconsistency in plaintiffs' complaint that merits attention here, and will merit attention in the event plaintiffs choose to replead. Smith and Maloney allegedly stand at the center of a conspiracy to divert premiums from plaintiffs to themselves. Yet plaintiffs also allege that the *other* defendants caused Mansion and Island to pay bribes to Smith and Maloney. As defendants state: "if ... the main 'wrong' was diversion of premiums *from plaintiffs* to Smith and Maloney, those same payments cannot be re-costumed as bribes paid to them by other defendants in order to influence their conduct of the affairs of Hall, Keough–Kirby and plaintiffs." Hall Opp. at 22.

(b) Transportation or receipt of stolen money:

In paragraph 49(a), plaintiffs allege "transportation of stolen money," yet they cite 18 U.S.C. § 2315, which refers to "sale or receipt" of stolen goods, securities or money. Furthermore, this alleged predicate act is mentioned in only three paragraphs of the complaint. *See also* ¶¶ 29(e), 50(d). Yet not one paragraph specifies with sufficient factual support each necessary element of this crime against each defendant so charged.

**B. Subject matter jurisdiction:**

With the RICO claim thus dismissed, this Court will retain jurisdiction only if complete diversity exists between the parties—see, e.g., *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978)—or if, in its discretion, it decides to exercise its pendent jurisdiction over the remaining state claims. Defendants advance three separate reasons why there is not complete diversity of citizenship between the parties: first, because there are plaintiffs and defendants who are citizens or subjects of one or more foreign states; second, because the complaint fails even to allege the citizenship of six separate co-defendants; and third, because both plaintiffs and some defendants are citizens of the same state, namely, Rhode Island.

 The Court finds it unnecessary to address each argument advanced by defendants. For present purposes, it is sufficient to note that their first claim highlights this Court's lack of jurisdiction. Plaintiffs allege that they are corporations organized under the laws of Grand Cayman, British West Indies, a foreign state. Am.Comp. ¶¶ 3–4. Plaintiffs also state that certain defendants are foreign corporations as well. Am.Comp. ¶¶ 9–10, 19–21. As the Second Circuit Court of Appeals has determined, "[d]iversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants." *ITT v. Vencap Ltd.,* 519 F.2d 1001, 1015 (2d Cir.1975).

 With respect to defendants' remaining two arguments, the Court will only note that it expects any future complaint to allege the citizenship of *all* defendants. Furthermore, the Court directs the parties to *Clifford Corporation, N.V. v. Ingber,* 713 F.Supp. 575 (S.D.N.Y.1989) (Walker, J.), in which this Court held that 28 U.S.C. § 1332(c) applies to alien corporations. For purposes of diversity, then, an alien corporation will be deemed a citizen of the state in which it has its principal place of business. If plaintiffs choose to replead and to rely on diver-

sity jurisdiction, and choose to name once again as defendants corporate citizens of Rhode Island, the Court expects a sufficient showing that plaintiffs—alien corporations—do not have their principal place of business in that state.

█ Finally, in the absence of a valid federal claim, the Court declines to exercise its jurisdiction over plaintiffs' pendent state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

For the reasons set forth above, the Court dismisses the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 9(b). The Court also grants plaintiffs leave to replead within twenty days. However, given the generalizations and repetitions in certain of plaintiffs' previously filed papers, it also reminds plaintiffs that the mere addition of paragraphs to a complaint, or pages to a memorandum, are no substitute for what Rule 9(b) and this Court require. If plaintiffs choose to file a Second Amended Complaint, and defendants once more move to dismiss, the Court will carefully compare the First and Second Amended Complaints to ensure that substance, and not merely surplusage, has been added.

SO ORDERED.