■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALAN KASSEBAUM, Appellant. [696 NYS2d 23] —Judgment, Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered June 16, 1995, convicting defendant, after a jury trial, of attempted criminal possession of a controlled substance in the first degree and conspiracy in the second degree, and sentencing him to concurrent terms of 25 years to life and 8⅓ years to life, respectively, unanimously affirmed.

Defendant had prior dealings with a group known to be engaged in heroin trafficking, and specifically raised money to purchase from an undercover agent in Boston the four kilograms of heroin at issue, which they planned to resell in New York. Defendant, who held a doctorate in pharmacology, met with the head of the criminal organization in New York, Salvatore Lombardi, and later that day traveled to Boston with two other members of the organization, Joseph Viola and Michael Booth, under assumed names, taking with them $120,000 for the undercover agent's courier fee, as well as equipment that could be used for testing the purity of heroin. When defendant, Viola and Booth arrived in Boston, they checked into a hotel (defendant and Booth under assumed names) and had frequent telephone contact with Lombardi, who was still in New York. Lombardi briefly visited the three men in Boston, after which he returned to New York, where he made telephone contact with the undercover agent, to whom Lombardi provided the name, location and telephone number of Viola, who would carry out the drug transaction. The next day, the undercover

agent spoke over the telephone with Viola, who told the agent to wait until he switched hotels. When they did meet, Viola showed the agent the $120,000 courier fee, told the agent that he planned to sell the heroin in New York, and then took a sample of heroin, which was then tested for its purity level. However, Viola ran into a plainclothes State Trooper in the stairwell whom Viola suspected of being a law enforcement official, and shortly thereafter called off the deal, on the ground that the heroin was of insufficient purity.

The evidence established, beyond a reasonable doubt, that defendant and his accomplices came dangerously close to possessing the heroin in New York, even though the heroin was rejected on the ground of inferior quality (*see, People v Acosta*, 80 NY2d 665). Defendant's attacks on the sufficiency of the evidence are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would find that the verdict was based on legally sufficient evidence. We further find that the verdict was not against the weight of the evidence.

We reject defendant's jurisdictional claims. Jurisdiction for both crimes was established under CPL 20.20 (1) (a), since defendant committed an element of the offenses in New York. Defendant formed the intent to possess heroin in New York (*compare, People v Guidice*, 83 NY2d 630, 635-636, *with People v Cullen*, 50 NY2d 168, 175), and he and his codefendants took many steps in New York towards completion of that crime, though they did not fully amount to an attempt until the Boston actions were effected. With respect to the conspiracy count, defendant formed both the intent and the agreement in New York, as well as many overt acts, and thus the entire crime was committed in New York, not just one element.

New York also obtained jurisdiction over both crimes pursuant to CPL 20.20 (2) (b), since both the possession and conspiracy statutes were designed to prevent the occurrence of a "particular effect" in New York, and the conduct of defendant and his codefendants was committed with intent that it have such an effect in New York, regardless of whether any conduct took place in New York. CPL 20.10 (4) sets forth: "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a 'particular effect' upon such jurisdiction." We reject, as contrary to the statutory language

and logic, the interpretation of CPL 20.10 (4) advanced in *People v Puig* (85 Misc 2d 228) that the term "community welfare" applies only to CPL 20.40, the county venue statute, and not to CPL 20.20, the State jurisdiction statute. The possession of illicit drugs in New York with intent to sell them to New Yorkers does have a materially harmful impact upon this jurisdiction (*see, Matter of Steingut v Gold,* 42 NY2d 311, 318).

We further find that jurisdiction was established over the attempted possession count under CPL 20.20 (2) (c), there being ample evidence of an attempt to possess heroin in New York, and over the conspiracy count under CPL 20.20 (2) (d).

We have considered and rejected defendant's remaining arguments, including those contained in his *pro se* supplemental brief. Concur—Rosenberger, J. P., Williams, Rubin, Saxe and Buckley, JJ.