**GLM CORPORATION, Plaintiff,**

v.

**Steven KLEIN, Richard Lasky, Jeffrey Fishman and Myles Horn, Defendants.**

**Steven KLEIN, Counterclaim Plaintiff,**

v.

**GLM CORPORATION, Counterclaim Defendant,**

and

**Michael L. Gordon, Herbert M. Luksch, William Dietch, GLM Investors, Inc., GLM Associates, Inc., GLM Equities, Inc., GLM Partners and GLM Capital Corporation, Additional Counterclaim Defendants.**

No. 86 Civ. 4399 (GLG).

United States District Court, S.D. New York.

May 2, 1988.

Golenbock and Barell, New York City (Michael C. Silberberg, Charles S. Joseph, of counsel), for plaintiff, counterclaim defendant and additional counterclaim defendants.

Mandel & Resnik, P.C., New York City (Richard M. Resnik, Howard Grun, of counsel), for defendant Myles Horn.

GOETTEL, District Judge:

In light of our earlier opinion, *GLM Corp. v. Klein,* 665 F.Supp. 283 (S.D.N.Y. 1987), we will assume familiarity with the facts of this case. Before us is the defendant Horn's motion for reargument of that part of our decision which denied his motion to dismiss the complaint insofar as it pled claims against him pursuant to the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.[1] For the reasons discussed below, the motion is denied.

---

1. Our prior decision was addressed to the second amended complaint. Since that time the plaintiff has filed a third amended complaint. The parties' papers on this motion were directed to this latest version of the complaint, as is our decision.

I. Count Seven

Count Seven of the third amended complaint ("amended complaint") charges Horn and the Klein defendants with violating 18 U.S.C. §§ 1962(a) and (c). Section 1962(a) makes it unlawful to use income derived from a pattern of racketeering activity to acquire an interest in or to establish an enterprise engaged in or affecting interstate commerce. Section 1962(c) makes it unlawful to conduct or to participate in the conduct of such an enterprise through a pattern of racketeering activity.

The predicate acts pleaded by GLM to establish a pattern of racketeering activity are mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and interstate transportation of stolen goods, 18 U.S.C. § 2314. The essential elements of the mail fraud statute are (1) a scheme to defraud and (2) knowingly using, or causing the use of, the mails to further that scheme. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986). The wire fraud statute is similarly construed. *United States v. Barta*, 635 F.2d 999, 1005 n. 11 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

Horn argues that for several reasons the amended complaint fails to sufficiently plead, against him, the elements of the predicate acts of mail and wire fraud. First, he claims that the Klein defendants' alleged fraudulent breach of their fiduciary duty is improperly being used to support the charge against him of participation in schemes to defraud.[2] Second, he argues that the amended complaint has not pled that his use of the mails or wires was "in furtherance" of any alleged scheme. Third, Horn argues that the amended complaint fails to allege that he had knowledge of a scheme to defraud. Finally, Horn argues, Count Seven is insufficiently particular because it is pled "upon information and belief."

a. Horn's participation in a scheme to defraud

■ One of the issues in our previous decision was whether GLM could bring an action for civil fraud against the Klein defendants based on the same allegations underpinning its claim against them for breach of their employment agreement. This issue arose because under New York law, a breach of contract ordinarily will not give rise to an action for fraud. Critical to our holding that the plaintiff did state a cause of action for fraud was our finding that the complaint alleged extracontractual wrongdoing, since the alleged breach of contract also constituted a breach of the Klein defendants' fiduciary duty to GLM.

Horn seizes upon this reasoning in support of his own cause. Horn explains that since he, unlike the Klein defendants, had no employment relationship with GLM, he owed GLM no fiduciary duty. Therefore, he reasons, he stands on a legal footing completely different from that of the Klein defendants. That being so, and, Horn claims, GLM having offered no basis, other than the Klein defendants' fraudulent breach, on which to support its allegations against him of mail and wire fraud, Horn concludes that with respect to him, the amended complaint fails to allege a scheme to defraud. As confirmation of the validity of his argument, Horn points to the fact that GLM has not pled a civil fraud claim against him.

This is utter nonsense, not only in its approach and reasoning, but also as to the law. First, whether or not GLM is barred from bringing a fraud claim against the Klein defendants, because it has available to it a breach of contract claim against them, has no bearing whatsoever on whether GLM can allege against Horn the predicate acts of mail and wire fraud. Moreover, as Horn acknowledges, the mail and wire fraud statutes reach much further than civil fraud.[3] Hence it is of no moment

---

**2.** The complaint alleges not one, but several schemes to defraud, since each of the diversions of the several real estate opportunities at issue involved a separate scheme to defraud. *GLM,* 665 F.Supp. at 289.

**3.** Horn's analysis of the charges of mail and wire fraud frequently disregards this distinction.

that GLM has not or could not claim civil fraud against Horn, and Horn's emphasis on that point is misplaced. Finally, it has long been held that one who wrongfully deprives another of money or property, by means of causing an employee to fraudulently breach his fiduciary duty to his employer, participates in a scheme to defraud. Directly on point is *Abbott v. United States*, 239 F.2d 310, 314 (5th Cir.1956), in which the defendant, a mineral resources developer, paid a dishonest employee of a petroleum company to provide him with copies of that company's geophysical maps. The maps were of geophysical surveys, which the company had conducted at great expense, and contained confidential information which was of "inestimable" practical value in the exploration and development of mineral resources. Consequently it was important to the company's ability to compete that the information contained in these maps remain in its sole possession and control. The court found that the defendant's actions in destroying the company's right to the exclusive enjoyment of its property, by the means of subverting the fidelity of its trusted servant, constituted a scheme to defraud. *Id.* at 314. *See also Shushan v. United States*, 117 F.2d 110, 115 (5th Cir.), *cert. denied*, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941) ("A scheme to get money unfairly by ... corrupting one who acts for another or advises him, would be a scheme to defraud...."); *United States v. Proctor & Gamble Co.*, 47 F.Supp. 676, 678–79 (D.Mass.1942) (defendant caused employees of rival to divulge trade secrets).[4]

b. Horn's use of the mails "in furtherance" of a scheme to defraud

 Horn next argues that GLM has failed to plead wire or mail fraud against him because any alleged uses of the mails or wires fairly attributable to him are not uses which can be said to have been "for the purpose of executing" any alleged fraudulent scheme.

The allegations to which Horn refers are the following: (1) that beginning in February 1986 Horn and the Klein defendants mailed or caused to be mailed projections and analyses prepared from misappropriated GLM software to various prospective investors; (2) that on May 19, 1986, the defendants' attorney, at the direction of Horn and the Klein defendants, sent checks to the Klein defendants representing the proceeds of the sale of their interests in Central Avenue; and (3) that on June 18, 1986 the defendants' attorney sent a letter to Horn and Klein detailing the disbursement of the profit on the sale of the Central Avenue property. In addition to the allegations to which Horn refers, the amended complaint alleges that: (1) on or after February 24, 1986, Horn mailed projections and analyses regarding Dara Gardens to prospective investors with knowledge that GLM's software and computer had been utilized to prepare them without GLM's permission; (2) Horn and the Klein defendants placed interstate phone calls to an investor, Parkview Financial, Inc., in Columbus, Ohio, with regard to the financing of Dara Gardens; (3) on or about February 7, 1986, Horn caused the group's attorney to send copies of contracts to purchase the Central Avenue property to the Klein defendants; (4) on or about February 14, 1986, the group's attorney sent checks on their behalf to the seller of the Central Avenue property; and (5) Horn and the Klein defendants mailed or caused to be mailed a check for $100,000 to acquire Midlands Mall, and made interstate telephone calls with regard to that property.

A use of the mails or wires is in execution of a scheme to defraud if it "is incident

---

4. Other cases have also held that a non-fiduciary who corrupts a fiduciary and thereby deprives the victim of intangible rights, such as the good and honest services of its employees, is subject to prosecution under the mail and wire fraud statutes. *See, e.g. United States v. Alexander*, 741 F.2d 962, 964 (7th Cir.1984); *United States v. George*, 477 F.2d 508 (7th Cir.1973), *cert. denied*, 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973). These cases have been overruled by the "crabbed" construction of the mail fraud statute in *McNally v. United States*, ——— U.S. ———, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (Quote is from Justice Stevens' dissenting opinion at 107 S.Ct. at 2889). In that case, the Supreme Court held that the mail and wire fraud statutes protect only money and property interests, and do not protect intangible rights.

or related to an essential element of the scheme." *Henderson v. United States*, 425 F.2d 134, 141 (5th Cir.1970) (citing *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)). For example, the use of the mails can be held to have been "for the purpose of executing" an alleged fraudulent scheme if accomplishing the scheme's purpose could be found to have depended in some way on the information and documents which were passed through the mail, *i.e.*, if "the thing mailed was an integral part of execution of the scheme...." *United States v. Kent*, 608 F.2d 542, 546 (5th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed. 2d 788 (1980); *see also United States v. Elkin*, 731 F.2d 1005, 1008–09 (2d Cir.), *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984). The amended complaint certainly meets this test. According to it, Horn and the Klein defendants used the mails and wires to obtain financing, to send contracts and checks for the purchase of the properties at issue, and to distribute the proceeds of at least one of the schemes, that concerning the Central Avenue property. Thus the amended complaint alleges uses of the mails and wires which could be found to have related to essential elements of the scheme and to have played an important role in the execution of the scheme to defraud GLM. Horn's argument that the mails were used merely "as a result of" the scheme and not for the purpose of its execution is without merit.

Horn also argues that two of the alleged mailings—that which forwarded the computer printouts relating to Dara Gardens, and that which delivered the proceeds of the Central Avenue property—cannot be said to have been "in furtherance" of the alleged scheme because they took place after the scheme had reached fruition. It is true that a use of the mails or wires cannot be deemed to have played an essential role in an alleged scheme if the use occurred after the scheme was fully consummated. *Parr v. United States*, 363 U.S. 370, 393, 80 S.Ct. 1171, 1184–85, 4 L.Ed.2d 1277 (1960). However, a fraudulent scheme to obtain money cannot be deemed consummated before the perpetrator has obtained the anticipated fruits of his illegal acts. *See United States v. Maze*, 414 U.S. 395, 402, 94 S.Ct. 645, 649–50, 38 L.Ed.2d 603 (1974) (scheme reached fruition when perpetrator obtained free lodging through the use of victim's credit card); *Kann v. United States*, 323 U.S. 88, 94–95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944) (scheme reached fruition when perpetrators cashed checks representing proceeds from scheme). Therefore, because both of the mailings to which Horn refers occurred before the defendants received any proceeds from the respective schemes, the mailings occurred before the schemes had reached fruition.

Horn makes a final point which does not warrant much discussion. Notwithstanding the number of mailings and phone calls recited above, Horn claims that the amended complaint fails to attribute a single specific use of the mails or wires to him. More perplexing is what he makes of this supposed state of affairs: "similar pleadings failing to particularly plead the use of the wires and mails, *i.e.*, time, place and contents of false representations, have been repeatedly struck down by Courts [sic] of the Second Circuit." Defendant Horn's Memorandum of Law in Support of Motion for Reargument at 4. Of course, the issue of whether one has sufficiently pled the use of the mails or wires in furtherance of a scheme to defraud is not determined by looking to whether other elements of mail and wire fraud have been sufficiently pled.

c. Horn's knowledge of a scheme to defraud

Under 18 U.S.C. § 2, one who aid or abets an offense against the United States is liable as a principal. For this reason, in addition to charging Horn directly with the predicate acts of mail and wire fraud, the plaintiff has also alleged that Horn aided and abetted the mail and wire fraud committed by the Klein defendants.

To prevail on its claim of aiding and abetting, GLM must prove: (1) the existence of a primary fraud; (2) knowl-

edge by the aider and abettor of that fraud; and (3) substantial assistance in the fraud. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). Incredibly, Horn argues that the amended complaint fails to allege his knowledge of any scheme to defraud GLM of profitable real estate opportunities. In the face of the plaintiff's allegations that Horn knew of the Klein defendants' employment relationship with GLM, and that he knew that they were diverting, and indeed induced them to divert, profitable real estate opportunities to him in derogation of their obligations to GLM, Horn's argument must be rejected out of hand.

█ Nor is it any answer to suggest, as Horn appears to do, that although he may have known these facts, he did not know that the Klein defendants' conduct constituted fraud, and therefore he cannot be charged with knowledge of a fraud. It is knowledge of the underlying fraudulent acts, rather than the understanding that under the law such conduct constitutes a fraud, which is germane to the issue of whether Horn can be liable for aiding and abetting fraud.

 d. Particularity of allegations pled on "information and belief"

█ Horn complains that the alleged factual basis for the RICO claim in Count Seven is pleaded upon information and belief. This argument too is without merit.

Ordinarily, allegations of fraud based on "information and belief" do not satisfy the particularity requirements of Rule 9(b). *Furman v. Cirrito,* 828 F.2d 898, 900 (2d Cir.1987); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974) (Oakes, J.). However, Rule 9(b) must be read in conjunction with Rule 8, *i.e.,* a plaintiff is not required to prove his case in his complaint. *Schlick,* 507 F.2d at 379.

Horn's challenge ignores the fact that the allegations contained in paragraphs 1 through 35 of the amended complaint (which are not made on information and belief) are incorporated by reference into Count Seven. These allegations provide the framework for Count Seven, and the allegations about which Horn complains simply provide greater detail. Moreover, the allegations contained in paragraphs 1 through 35 themselves provide a good deal of detail. In light of this, it is no offense to Rule 9(b) that the allegations complained of are pled on information and belief.

## II. Count Eight

█ Count Eight of the amended complaint charges Horn and the Klein defendants with violating 18 U.S.C. § 1962(d). That section provides that it is "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section".

Horn argues that Count Eight should be dismissed for largely the same reasons he offered against Count Seven. In addition, Horn grasps at a piece of poorly drafted pleading contained in Count Eight which reads: "The pattern of racketeering activity agreed to be committed by each of the defendants consisted of a conspiracy to violate through one or more separate conspiracies at least two acts of mail fraud, in violation of 18 U.S.C. § 1341 and one act of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 as set forth [in earlier paragraphs of the amended complaint]." Horn claims that by this language, the plaintiff pleads only a conspiracy to commit mail fraud as the underlying predicate act of the alleged RICO conspiracy, and that the plaintiff has therefore failed to state a cause of action for RICO conspiracy.

A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Upon examination of this exhaustive complaint, and specifically Count Seven, we find allegations by the plaintiff which would support recovery under section 1962(d). Therefore, notwithstanding the plaintiff's unartful presentation of its claim, we cannot say, under the liberal approach of the federal rules, that the plaintiff has failed to state an

actionable cause of action for a RICO conspiracy.[5]

CONCLUSION

We have considered the other arguments raised by Horn, and find them to be without merit. For all of the reasons discussed above, the motion to reargue is denied.

SO ORDERED.

---

**5.** Even were we to take a stricter approach, and dismiss Count Eight on the basis of Horn's technical reading of the complaint, we would be constrained to do so with leave to replead. Hence the issue is of very little practical consequence to Horn's position.