**ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**CALVERT FIRE INSURANCE COMPANY, et al., Defendants.**

**No. 86 Civ. 3898 (WCC).**

United States District Court, S.D. New York.

Sept. 13, 1988.

Bingham Englar Jones & Houston, New York City, for plaintiff; Donald T. Rave, Jr., of counsel.

Jones, Day, Reavis & Pogue, New York City, for defendants; Frederick E. Sherman, Thomas L. Abrams, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff, Arkwright–Boston Manufacturers Mutual Insurance Company, brought this action to recover under a reinsurance certificate. The defendant, Fortress Re, Inc., issued the certificate on behalf of a group of reinsurance companies. These companies are also defendants in this action.

This case was tried before a jury between November 23, 1987 and December 1, 1987. The Court directed the jury to return a special verdict consisting of answers to three interrogatories. The jury answer-

ed the interrogatories in favor of the plaintiff, and the Court directed the plaintiff to submit a proposed judgment on notice. The plaintiff served its proposed judgment on December 23, 1987, which the Court signed on January 4, 1988. The Clerk of the Court entered the judgment on the docket on January 11, 1988.

This case is now before the Court on defendants motion pursuant to Rule 50(b), Fed.R.Civ.P., for judgment notwithstanding the verdict. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Defendant Fortress is a reinsurance manager authorized to issue reinsurance agreements on behalf of the members of its reinsurance group. Mutual Marine Office, Inc., is an insurance underwriter authorized to issue contracts of insurance on behalf of members of its insurance pool. Arkwright is a member of the Mutual Marine pool.

American Totalisator, Inc., a company which owns race track betting machines throughout the United States and Canada, approached Mutual Marine to obtain insurance coverage for its race track betting machines. Mutual Marine supplied an Arkwright policy to American Totalisator.

Mutual Marine sought to decrease Arkwright's risk by acquiring reinsurance for the American Totalisator policy. For this, Mutual Marine retained Pritchard & Baird, a reinsurance intermediary, who placed part of Arkwright's risk on the Totalisator policy with Fortress. The reinsurance was to be effective from July 1, 1974 until July 1, 1977, with premiums due each year on the contract's anniversary date. The policy contained the following clause:

> This reinsurance may be cancelled at any time on a pro-rata basis by either party giving written notice to the other stating when such cancellation shall be effective as follows: (a) If the Ceding Company cancels, the cancellation shall be effective as set forth in the notice, or (b) If the Reinsurers cancel, the cancellation shall be effective not less than thirty (30) days from the date of the sending of the notice.

Arkwright insured American Totalisator for $1,500,000. The Fortress reinsurance certificate did not cover the first $500,000 of the American Totalisator risk. Of the remaining $1,000,000 of exposure, the Fortress group was responsible for 15%, or $150,000. The reinsurance certificate also contained a warranty of retention pursuant to which Arkwright was obligated not to obtain facultative reinsurance on the first $500,000 of exposure.

Arkwright paid the first premium to Mutual Marine, and Mutual Marine paid Pritchard & Baird by check. The check was payable to Pritchard & Baird, and included both the premiums due the Fortress group, as well as premiums due other reinsurers who were participating in the reinsurance of the American Totalisator risk. Pritchard & Baird forwarded the payment to Fortress.

Arkwright followed the same procedure with the second premium. Pritchard & Baird, however, never forwarded the payment on to Fortress. On October 20, 1975, Fortress sent letters to Arkwright and Mutual Marine giving written notice of cancellation, and citing non-payment of premium as its justification.

Mutual Marine responded by letter dated November 21, 1975, stating that they had forwarded the premium to Pritchard & Baird in September. In addition, they denied that Fortress's notice of cancellation was effective, stating, "as Pritchard & Baird were the agents of the reinsurer for the purpose of collecting premium, our payment to that firm constituted payment, as a matter of law to the reinsurer." Fortress wrote back on December 4, 1975 stating, "we expressly deny the erroneous legal conclusions [put forth by Mutual Marine].... Accordingly, we are processing our cancellation of this certificate which was effective November 25, 1975."

On December 5, 1975 Fortress issued Arkwright a "Notice of Cancellation Endorsement" providing that "in consideration of a return premium of $1238.75, the captioned Reinsurance Certificate is hereby

cancelled" as of November 25, 1975. In reality, however, no premium was returned. As Fortress's President, M.B. Sabbah testified, Fortress offset the premiums that it claimed Mutual Marine owed against the premiums it claimed it was returning.

Approximately one year later, on November 11, 1976, Mutual Marine sent Fortress a letter transmitting a check payable to Fortress in the amount of $2,403.59. At trial Mr. Sabbah testified that the letter did not indicate the accounts to which the check applied. Arkwright's former controller, Lilia Lee, testified to the contrary. She claimed that the documentation accompanying the check clearly denoted that it included the premium for reinsurance of the American Totalisator risk.

Mutual Marine continued to send Fortress various documents relating to the certificate of reinsurance. Fortress regularly returned these documents, pointing out that the certificate was no longer in effect. On December 20, 1976, a little more than a month after receiving Mutual Marine's check, Fortress sent the following letter to Mutual Marine:

> The attached documents are being returned to you as they appear to refer to premium amendment effective 7/1/76, when our certificate was cancelled 11/25/75.
>
> You will recall that our letter of the 4th of December, 1975 disputed the facts contained in your letter of the 21st of December 1975, and our cancellation endorsement was issued on the 5th of January, 1976.
>
> If you find that you have paid any premiums to our office, which were applicable after 11/25/75, please identify by cheque number and date paid, and we will arrange for a refund.

Neither Mutual Marine nor Arkwright responded to this letter, nor did they inform Fortress that either of them believed that they had paid the third year's premium.

On March 22, 1977, Mutual Marine sent Fortress a "Reinsurance Notice" claiming on a loss sustained by American Totalisator. Upon receipt of the notice, Fortress replied that records indicated that the certificate was cancelled in November of 1975, and they denied coverage for Arkwright's loss.

## II. DISCUSSION

Under Rule 50(b), Fed.R.Civ.P., a court cannot grant judgment notwithstanding the verdict unless, when viewing the evidence in the light most favorable to the non-moving party, the court concludes that no reasonable jury could have returned a verdict against the movant. *See Mattivi v. South African Marine Corp.,* 618 F.2d 163, 167–68 (2d Cir.1980). Defendants' motion focuses on the first special-verdict question which asked, "Has plaintiff shown by a preponderance of the evidence that Pritchard & Baird was the agent of Fortress Reinsurance and the reinsurers it represented for collection of premiums on reinsurance of the American Totalisator risk?" The jury answered this question in the affirmative.

Defendants have not argued that the jury's answer to this question was unreasonable in light of the evidence. Instead, they contend that this issue was not relevant to their liability, because their notice of cancellation was effective to terminate the reinsurance policy; return of premiums, they assert, was not a condition precedent to such termination.

In support of this contention defendants have cited several cases interpreting various contractual and statutory provisions governing cancellation of insurance contracts, each of which concluded that the return of unearned premiums was not a condition precedent to termination. All but two of these cases, however, involved cancellation clauses expressly providing that return of unearned premiums was not mandatory until after cancellation became effective. *See Marchessault v. National Grange Mutual Liability Co.,* 229 F.2d 698, 700–01 n. 3 (2d Cir.1956); *Ardoin v. Audubon Ins. Co.,* 434 So.2d 627, 629 (La. App.1983); *Westmoreland v. General Accident Fire & Life Assurance Corp.,* 144 Conn. 265, 129 A.2d 623, 626 (1957); *Leslie v. Standard Accident Ins. Co.,* 327 Ill.App. 343, 64 N.E.2d 391, 392 (1945). *But see*

*Elmore v. Middlesex Mutual Fire Ins. Co.,* 219 S.C. 520, 65 S.E.2d 871 (1951) (despite clause stating that return of unearned premium was not mandatory until after cancellation became effective, court held return of premium a condition precedent). Of the two remaining cases, one involved a clause expressly stating that payment of the unearned premium is not a condition of cancellation, *Hall v. Motorists Ins. Corp.,* 109 Ariz. 334, 509 P.2d 604, 606 (1973), and the other involved a clause providing for the return of unearned premium only on demand. *Summers v. Travelers Ins. Co.,* 109 F.2d 845, 847 (8th Cir.1940). The clause at issue in the instant case involves no such express language. It merely states that cancellation is permissible "at any time on a pro-rata basis." Thus, defendants' cases are not controlling.

■ In cases like the one at bar, when there is no express language indicative of whether cancellation is effective without the return of premiums, the general rule is that the return of premiums is a condition precedent to cancellation. *See, e.g., Saitta v. Bankers Indemnity Ins. Co.,* 172 Pa.Super. 641, 643–44, 95 A.2d 375, 376–77 (1953); *Crotts v. Fletcher Motor Co.,* 219 S.C. 204, 64 S.E.2d 540, 542, 546 (1951); *Ellzey v. Hardward Mut. Ins. Co.,* 40 So.2d 24, 26, 28–29 (La.1949); *Seaboard Fire & Marine Ins. Co. v. Hines,* 142 S.W.2d 538, 539 (Tex.Civ.App.1940); *Hamilton Ridge Lumber Corp. v. Boston Ins. Co.,* 133 S.C. 472, 131 S.E. 22, 25 (1925); *Gosch v. Firemen's Ins. Co.,* 33 Pa.Superior Ct. 496, 499, 502, 504 (1907); *Tisdell v. New Hampshire Fire Ins. Co.,* 155 N.Y. 163, 165, 167, 49 N.E. 664 (1898); 45 C.J.S. *Insurance* § 451. In addition, general principles of the law of contracts weigh in favor of plaintiff's interpretation. When, as here, a contract is ambiguous, it should be interpreted against the drafter. *American Home Products Corp. v. Liberty Mutual Ins. Co.,* 565 F.Supp. 1485, 1492 (S.D.N.Y.1983) *aff'd as modified,* 748 F.2d 760 (2d Cir.1984). Fortress drafted the contract. Therefore, un-

der both the law of contracts generally and the law of insurance contracts specifically, the return of unearned premiums should be considered a condition precedent to cancellation in this case.

Defendants have argued that the law of North Carolina should apply, and they point out that North Carolina does not favor conditions precedent. *See Fortress Re, Inc. v. Jefferson Ins. Co. of New York,* 465 F.Supp. 333, 338 (E.D.N.C.1978), *aff'd,* 628 F.2d 860 (4th Cir.1980). Nevertheless, North Carolina considers the intent of the parties, as ascertained from the circumstances of the case, to be decisive. *Id.* Here, the defendants stated in their notice of cancellation that they cancelled the reinsurance certificate "[i]n consideration of a return of premium." This indicates that defendants themselves considered the return of premium to be a precondition to cancellation. Thus, even under North Carolina law, the return of premiums would be a condition precedent to cancellation.[1]

Defendants have not shown that the jury's answer to this question was erroneous as a matter of law, nor have they shown that the jury's answer was unsupported by the evidence. Accordingly, the motion for judgment notwithstanding the verdict is denied.

■ Defendants have argued that the Court should nevertheless set aside the verdict and order a new trial. Ordinarily, the party seeking a new trial must show that the verdict is against the weight of the evidence or that the trial was not fair to the moving party. *Mallis v. Bankers Trust,* 717 F.2d 683, 691 (2d Cir.1983). As discussed above, the verdict was not against the weight of the evidence. Accordingly, defendants must demonstrate that the trial was unfair.

Defendants assert that the testimony of plaintiff's expert, John Barringer, was prejudicial. The testimony at issue concerned an incident involving the firm of Derek O. Donahue & Co., a reinsurance broker who

---

1. Plaintiff asserts that New York Law applies to this case. However, because I have concluded that the North Carolina courts would interpret the cancellation clause to favor plaintiff, I need not decide the choice of law issue.

was not a party to this case. Barringer testified that when Derek O. Donahue & Co. misappropriated premiums, the reinsurers involved honored claims made on the policies even though they never received the premiums.

■ This testimony is probative of an industry-wide understanding that the broker is the reinsurer's agent for payment. One of the issues in the instant case was whether Pritchard & Baird, the reinsurance broker, was the agent of the defendant reinsurance companies. Thus this evidence was relevant. *See* Fed.R.Evid. 401. Defendants have not even attempted to demonstrate that the prejudicial effect of the evidence substantially outweighed the probative value. *See* Fed.R.Evid. 403. Indeed, the evidence, though clearly probative, does not appear to be unfairly prejudicial to any degree.

■ Defendants also challenge the admission of evidence relating to defendants knowledge of the poor financial condition of Pritchard & Baird. Apparently, defendants believe that this evidence may have confused the jury because it relates to negligence, which was not an issue in this case. While this may be true, there is nothing to indicate that this potential error infected the whole trial with unfairness.

■ Defendants also assert that it was unfair of the Court to amend the pleading at the trial to allow Arkwright to sue as the real party in interest and representative of all members of the Mutual Marine pool of insurance companies. This argument is disingenuous in light of the prior proceedings. This case was initially filed in state court and then removed to federal court. In state court defendants moved successfully to have Mutual Marine dismissed as a party plaintiff on the ground that Arkwright was the real party in interest. Defendants now should not be permitted to claim otherwise. In addition, Arkwright's position is analogous to the situation described in Rule 17(a), Fed.R.Civ.P., where a person who has entered into a contract for another's benefit may sue in his own name without joining the party for whom he sues. Arkwright, by entering into a reinsurance contract on behalf of the Mutual Marine pool, has similarly entered into a contract in its own name for the benefit of others.

Defendants' final claim of unfairness challenges the charge to the jury on the question of whether defendants had waived their right to enforce plaintiff's warranty of retention. The contract contained a provision that obligated Arkwright to retain the entire risk for the first $500,000 of the American Totalisator policy. At trial it appeared that Arkwright had broken its pledge by reinsuring part of that $500,000 risk. The Court instructed the jury that if defendants knew, *before* agreeing to issue the policy, that Arkwright intended to reinsure a substantial part of this primary risk, then they had to find a waiver of the warranty of retention.

Defendant argues that the issue is not whether they knew of the reinsurance *before* issuing the certificate, but rather whether they knew of it *when* they issued the certificate. This is a meritless argument. If defendants knew of the plan to reinsure the primary risk before they issued the certificate, then they also must have known of it when they issued the certificate.

### III.  CONCLUSION

For the foregoing reasons the motion for judgment notwithstanding the verdict is denied. The motion, in the alternative, for a new trial is also denied. Settle judgment on notice.

SO ORDERED.